

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| KIMBERLY C. MARSHALL, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CHICAGO POLICE OFFICERS )<br>JOEL BUCKLEY, EARL DIGBY, )<br>JENNIFER ELLIOT-HOLMES, )<br>and the CITY OF CHICAGO, )<br>)<br>Defendants. ) | No. 08 C 6793<br><br>Judge Ruben Castillo |

## MEMORANDUM OPINION AND ORDER

Kimberly C. Marshall ("Plaintiff") filed this action against Chicago Police Officers Joel Buckley, Earl Digby, and Jennifer Elliot-Holmes ("Defendant Officers") and the City of Chicago (collectively "Defendants"), raising claims under the First, Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments as well as state law claims of intentional infliction of emotional distress, malicious prosecution, and indemnity. (R. 19, Pl.'s First Am. Compl.) Presently before the Court is Defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (R. 32, Defs.' Mot. to Dismiss ("Def.'s Mot.").) For the following reasons, the motion is granted in part and denied in part.

## RELEVANT FACTS

Plaintiff is a decorated Chicago police officer who has worked for the department for the past 19 years. (R. 19, Pl.'s First Am. Compl. ¶ 3.) On May 30, 2005, Plaintiff received a call from her fifteen-year old son saying he had been in an accident with her car. (*Id.* ¶ 6.) He had

1

taken the car without her permission and allowed his friend to drive. (*Id.*) The friend drove into some parked cars approximately three blocks from Plaintiff's home. (*Id.*) Plaintiff went to the scene, and upon her arrival, she spoke to witnesses who confirmed that her son's friend had been driving at the time of the accident. (*Id.* ¶ 7.) Shortly thereafter Officers Buckley and Elliot-Holmes arrived at the scene and asked what happened. (*Id.*) Plaintiff identified herself as an off-duty Chicago police officer and began to explain what she knew about the accident, when her son stepped up and said, "It was all my fault." (*Id.* ¶ 8.) Officer Buckley put Plaintiff's son in handcuffs. (*Id.* ¶ 9.) Plaintiff then said, "[W]ait, he was not the driver," and asked the officers to call a sergeant to the scene. (*Id.*) Defendant Officer Elliot-Holmes approached Plaintiff and attempted to move her away from the area. (*Id.*) Plaintiff said, "[W]ell if you won't call the sergeant, can I at least ride with my son to the police station?" (*Id.* ¶ 10.)

The next thing Plaintiff remembers is "laying flat on the ground," and Officer Buckley hitting her on the head with his flashlight. (*Id.* ¶ 11.) He "grabbed [her] and jammed her against the car, and then through [sic] her in the squad car." (*Id.* ¶ 12.) At one point during this "tussle," Plaintiff got ahold of Officer Buckley's radio and radioed in "officer needs assistance." (*Id.* ¶ 12.) Plaintiff was eventually released, and she went to the hospital. (*Id.* ¶ 13.) While there she called an evidence technician, who came out and took pictures of her various injuries and bruises. (*Id.*)

Plaintiff was charged with battery, resisting arrest, and obstruction of justice as a result of this incident. (*Id.* ¶ 14.) Prior to trial, Plaintiff sent multiple subpoenas to the Chicago Police Department seeking production of the pictures taken by the evidence technician, but each subpoena was returned with the statement that there were no such pictures. (*Id.* ¶ 16.) Her case

2

went to trial in the spring of 2007. (*Id.* ¶ 15.) During the trial, the Defendant Officers testified that Plaintiff had not been injured in any way during the May 2005 incident. (*Id.* ¶ 17.) Officer Digby testified that he took mugshot photos of Plaintiff the night of the incident showing that she had no injuries. (*Id.*) The State attempted to introduce photos that were allegedly taken by Officer Digby the night of her arrest, but Plaintiff claims the photos were actually taken of her prior to this incident.[1] (*Id.*) Plaintiff was found guilty of the crimes charged. (*Id.* ¶ 19.)

A few months after the trial, Plaintiff met with an investigator from the Chicago Police Department's Office of Professional Standards, now called the Independent Police Review Authority ("IPRA"). (*Id.* ¶ 20.) During this interview she saw the pictures of herself and her injuries taken by the evidence technician in the investigator's files. (*Id.*) In October 2007, Plaintiff filed a motion to vacate the guilty verdicts, attaching the pictures to her motion. (*Id.* ¶ 21.) The Cook County State's Attorney vacated the guilty verdict and entered a *nolle prosequi* as to all charges. (*Id.* ¶ 22.)

On February 23, 2009, the IPRA initiated disciplinary proceedings against Plaintiff based on the May 2005 incident. (*Id.* ¶ 23.)

## PROCEDURAL HISTORY

In November 2008, Plaintiff filed a *pro se* complaint against Defendants. (R. 1, Compl.) She subsequently obtained counsel to represent her. (R. 12, Attorney Appearance.) On April 7, 2009, filed her First Amended Complaint through counsel raising five claims: In Count I, Plaintiff alleges that Defendants engaged in a conspiracy to deprive her of her federal

---

[1] The complaint does not make clear whether the photos allegedly taken by Officer Digby were actually received into evidence. (*See* R. 19, First Am. Compl. ¶ 18.)

3

constitutional rights; in Count II, Plaintiff alleges a state law claim for intentional infliction of emotional distress ("IIED"); in Count III, Plaintiff alleges a claim for malicious prosecution against Officers Buckley and Elliott-Holmes; in Count IV, she alleges a Fourteenth Amendment due process claim against all Defendant Officers; and in Count V, she alleges an indemnity claim against the City of Chicago. (R. 19, First Am. Compl.) Defendants argue that the complaint must be dismissed in its entirety pursuant to Rule 12(b)(6) because Plaintiff has failed to state a claim for relief. (R. 32, Def.'s Mot.)

## LEGAL STANDARDS

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a plaintiff must plead a "short and plain statement of the claim showing that the pleader is entitled to relief" so that the defendant has fair notice of the claim and "the grounds on which it rests." Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The plaintiff is not required to plead detailed facts; however, simply stating the elements of a cause of action is not enough to survive a motion to dismiss. *See Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009). To survive a motion to dismiss, the complaint must pass "two easy-to-clear hurdles:" (1) "the complaint must describe the claim in sufficient detail to give the defendant fair notice of what the claim is and the grounds upon which it rests;" and (2) "it's allegations must plausibly suggest that the plaintiff has a right to relief, raising that possibility above the speculative level." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1084 (7th Cir. 2008). In deciding a motion to dismiss, the Court must accept the allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Twombly*, 550 U.S. at 556; *Brooks v. City of Chicago*, 564 F.3d 830, 832 (7th Cir. 2009).

## ANALYSIS

Given that the Court's jurisdiction over the state law claims hinges on the viability of the federal claims, the Court begins with Plaintiff's federal claims.

### I. Fourteenth Amendment

In Count IV, Plaintiff alleges that the Defendant Officers deprived her of her Fourteenth Amendment due process rights by writing false police reports, writing false complaints, misinforming prosecutors, hiding exculpatory pictures, and causing disciplinary action to be taken against her. (R. 19, Pl.'s First Am. Compl. ¶¶ 48-53.) Plaintiff clarifies in her response to the motion to dismiss that her claim is premised on *Brady v. Maryland*, 373 U.S. 83 (1963). (*See* R. 36, Pl.'s Resp. at 4-10.) *Brady* recognizes the constitutional duty of the prosecution to turn over exculpatory or impeaching evidence to a defendant in a criminal proceeding. *Brady*, 373 U.S. at 87; *Carvajal v. Dominguez*, 542 F.3d 561, 566-67 (7th Cir. 2008). The duty "extends to the police and requires that they similarly turn over exculpatory/impeaching evidence to the prosecutor, thereby triggering the prosecutor's disclosure obligation." *Carvajal*, 542 F.3d at 566. A *Brady* violation has three elements: (1) the evidence at issue must be favorable to the accused, either being exculpatory or impeaching; (2) the evidence must have been suppressed by the government; and (3) the evidence must be material, meaning there is a reasonable probability that the result of the proceeding would have been different had the evidence been disclosed. *Id.* at 566-67.

Defendants move to dismiss this claim in its entirety. (R. 32, Defs.' Mot. at 3.) They first argue that Plaintiff's allegations pertaining to the submission of false reports, filing of false charges, misinforming prosecutors, or giving false testimony do not state a cognizable Fourteenth

5

Amendment due process claim. (R. 36, Defs.' Mot. at 3-4.) The Court agrees. The Seventh Circuit has made clear that "[a] plaintiff cannot state a due process claim by combining what are essentially claims for false arrest under the Fourth Amendment and state law malicious prosecution into a sort of hybrid substantive due process claim under the Fourteenth Amendment." *Brooks*, 564 F.3d at 833; *McCann v. Mangialardi*, 337 F.3d 782, 786 (7th Cir. 2003) (claim stemming from the use of false evidence or false testimony is "in essence" a claim for malicious prosecution, rather than a due process claim); *see also Williams v. Carroll*, No. 08-4169, 2009 WL 383623, at *2-3 (N.D. Ill. Feb. 17, 2009) (dismissing Fourteenth Amendment claim because "Plaintiff's allegations that Defendants submitted false charges and false police reports, swore to false statements and otherwise acted to influence and persuade the State's Attorney to prosecute Plaintiff and to deny Plaintiff fair legal proceedings essentially amount to a malicious prosecution claim.").

Therefore, Plaintiff's allegations that Defendant Officers made false police reports, initiated false charges, and provided false testimony are not properly cast as a Fourteenth Amendment due process claim. Plaintiff appears to concede this point when she indicates in her response that she is basing her Fourteenth Amendment claim on *Brady*, a trial right pertaining to the suppression of favorable evidence, which does not encompass these other actions by police. (*See* R. 36, Pl.'s Resp. at 5 ("Truly, Count IV pleads violation of the 14th Amendment because of *Brady* violations.").) For the sake of clarity, the Court dismisses Count IV with prejudice to the extent it is attempting to raise some type of claim other than a *Brady* violation.

Defendants similarly argue that Plaintiff's allegations about the initiation of disciplinary proceedings do not state a cognizable Fourteenth Amendment due process claim. (R. 32, Defs.'

Mot. at 7.) In explaining the legal basis for this claim, Plaintiff responds, somewhat confusingly, that "even if the retaliatory action, alone, was not a violation of her due process rights, it is just one factual allegation about Defendants' conduct that Plaintiff pled in support of her allegation that they violated her constitutional rights." (R. 36, Pl.'s Resp. at 7.) Plaintiff states elsewhere in her response, however, that her due process claim is premised on *Brady*, and the initiation of disciplinary proceedings in no way implicates *Brady*. *See Brady*, 373 U.S. at 87. Accordingly, this aspect of Count IV is also dismissed with prejudice.[2]

What remains is Plaintiff's allegation that Defendant Officers wrongfully suppressed the photographs documenting her injuries and prevented her from using this evidence at trial. (R. 19, First Am. Compl. ¶ 50.) Defendants concede that this allegation ostensibly implicates *Brady*, but nevertheless argue that the claim is deficient for several reasons. (R. 32, Defs.' Mot. at 6-9.)

Defendants first argue that Plaintiff failed to allege their personal involvement in the suppression of the photographs. (*Id.* at 6.) A plaintiff bringing a civil rights action must prove that the defendant personally participated in or caused the unconstitutional actions. *See Alejo v. Heller*, 328 F.3d 930, 936 (7th Cir. 2003). Thus, Plaintiff must plead personal involvement of each Defendant to properly state a claim under Section 1983. *Id.* The Court finds that Plaintiff has done that here. She specifically alleges that Officers Buckley and Elliott-Holmes purposefully attempted to hide the photographs from her, and that Officer Digby falsely testified that he took mugshots of Plaintiff showing she had no injuries the night of the incident; she further alleges that the Defendant Officers went so far as to manufacture fake photos in an effort

---

[2] Because of this ruling, the Court does not reach Defendants' arguments that the claim pertaining to the initiation of disciplinary proceedings is inadequately pled. (*See* R. 32, Defs.' Mot. at 4-5; R. 37, Defs.' Reply at 6-7.)

to keep the favorable photos from her. (R. 19, Pl.'s First Am. Compl. ¶¶ 16-17, 50.) The Court must accept Plaintiff's allegations about the Defendant Officers' personal involvement as true at this stage, and therefore rejects Defendants' argument. *See Brooks*, 564 F.3d at 832.

Defendants next argue that the photographs were not favorable, because at best they showed that "a substantial degree of force needed to be employed by the arresting officers to subdue a violent offender who had battered a police officer. . . ." (R. 32, Defs.' Mot. at 7.) Under *Brady*, the evidence at issue must be favorable to the accused, either being exculpatory or impeaching. *Carvajal*, 542 F.3d at 566-67. While an inference may be drawn from the photos that force was needed to subdue Plaintiff, a competing inference can be drawn that, consistent with Plaintiff's account, Officers Buckley and Elliott-Holmes used an excessive amount of force against her even though she had done nothing wrong. The photographs would have impeached the Defendant Officers' testimony that Plaintiff was not injured in any way during this incident. (*See* R. 19, Pl.'s First Am. Compl. ¶ 17.) At this stage, the Court must draw all inferences in Plaintiff's favor, and in doing so the Court finds that Plaintiff has pled enough to show that the photographs constituted favorable evidence.

Defendants also argue that the photographs were not material. (R. 32, Def.'s Mot. at 6-9.) Evidence is considered material if there is a reasonable probability that the result of the proceeding would have been different had the evidence been disclosed. *Carvajal*, 542 F.3d at 566-67. Here, Plaintiff alleges facts establishing a reasonable probability that the criminal proceeding would have turned out differently had the evidence not been suppressed. Indeed, after the photos came to light, the proceeding *did* have a different result, since the state's attorney moved to vacate the guilty verdict and entered a *nolle prosequi* as to all charges. (R. 19, Pl.'s

First Am. Compl. ¶ 22.) The Court therefore rejects Defendants' argument.

Finally, Defendants argue that the pictures were not "suppressed" for purposes of *Brady* because Plaintiff had access to other methods of proof of the same facts. (R. 32, Defs.' Mot. at 8). Evidence is suppressed under *Brady* when: (1) the prosecution failed to disclose the evidence in time for the defendant to use it; and (2) the evidence was not otherwise available to the defendant through the exercise of reasonable diligence. *Carvajal*, 542 F.3d at 567. There can be no *Brady* violation when the defense had access to the same evidence through other means. *See, e.g., Pruitt v. McAdory*, 337 F.3d 921, 926 (7th Cir. 2003) (finding no *Brady* violation when it was not disclosed that a witness only testified after judge issued an appearance bond because the defense already knew of the witness's reluctance to testify); *see also United States v. White*, 970 F.2d 328, 337 (7th Cir. 1992) (evidence not suppressed where it was in the public record and could have been obtained by defense counsel through exercise of reasonable diligence).

Here, the evidence at issue consisted of photos that were in the exclusive possession of the police. Plaintiff alleges that she made multiple specific requests for the photos but was falsely told they did not exist. (R. 19, Pl.'s Am. Compl. ¶ 16.) Plaintiff may have been present when her injuries occurred and could testify to her version of events, but the photographs had independent significance: The criminal case turned on the conflicting testimony of Plaintiff and the Defendant Officers, and the photographs provided documentary evidence impeaching the testimony of the Defendant Officers about Plaintiff's condition following her arrest. *See Crivens v. Roth*, 172 F.3d 991, 998 (7th Cir. 1999) (*Brady* violation occurred where state did not disclose evidence going to credibility of witness whose testimony was "the heart of the state's case").

9

The Court therefore finds this case distinguishable from *Balfour v. Haws*, 892 F.2d 556 (7th Cir. 1989), relied on by Defendants. (R. 32, Defs.' Mot. at 8.) *Balfour* was a habeas case in which the Seventh Circuit found no due process violation where the defense was denied access to photographs depicting the defendant's re-enactment of a fight at the police station. *Balfour*, 892 F.2d at 566. The Seventh Circuit found no indication that the trial testimony was inconsistent with the information that would have been conveyed by the photographs, whereas here the photos directly impeached the Defendant Officers' testimony that Plaintiff was not injured during this incident. *See id.* Additionally, there was no showing of bad faith in *Balfour*, whereas here Plaintiff specifically alleges that the Defendant Officers intentionally tried to keep the photos from her and even manufactured fake photos in an effort to undermine her credibility. *See id.*

For these reasons, Plaintiff has adequately pled a *Brady* violation based on the suppression of the photographs, and this aspect of the motion is denied.

## II. Conspiracy

In Count I, Plaintiff claims that the Defendant Officers conspired to deprive her of her rights under the First, Fourth, Fifth, Six, Eighth, and Fourteenth Amendments. (R. 19, Pl.'s First Am. Compl. ¶ 25.) Conspiracy is not an independent basis of liability in Section 1983 actions, and so if Plaintiff cannot establish an underlying constitutional violation, her conspiracy claim must be dismissed. *See Smith v. Gomez*, 550 F.3d 613, 617 (7th Cir. 2008), *Cefalu v. Village of Elk Grove*, 211 F.3d 416, 423 (7th Cir. 2000). Defendants have raised detailed challenges to the viability of a conspiracy claim premised on either the First, Fifth, Sixth, or Eighth Amendments given the facts of this case. (R. 32, Defs.' Mot. at 9-13.) Plaintiff does not provide any direct response to these arguments, and instead states that her conspiracy claim is premised on

violations of the Fourth and Fourteenth Amendments. (*See* R. 36, Pl.'s Resp. at 10-11.) Based on Plaintiff's abandonment of the other aspects of her conspiracy claim, Count I is dismissed with prejudice to the extent it is based on violations of the First, Fifth, Sixth, or Eighth Amendments.[3] *See Ienco v. Angarone*, 429 F.3d 680, 685 (7th Cir. 2005); *Kirskey v. R.J. Reynolds Tobacco Co.*, 168 F.3d 1039, 1041 (7th Cir. 1999).

That leaves Plaintiff's claim that Defendants conspired to deprive her of her Fourth and Fourteenth Amendment rights. (*See* R. 36, Pl.'s Resp. at 10-11.) As to the Fourth Amendment, Defendants argue that this claim is time-barred. (R. 32, Defs.' Mot. at 9-10). The applicable statute of limitations for a Fourth Amendment claim is two years. 735 ILCS 5/13-202; *Brooks*, 564 F.3d at 832. The statute of limitations begins to run "at the time the claimant becomes detained pursuant to legal process," even if the arrest results in subsequent criminal proceedings. *Brooks*, 564 F.3d at 832. Here, Plaintiff was arrested on May 30, 2005, and brought this action in November 2008. (R. 1, Compl.) The claim is thus untimely.

Plaintiff argues that the claim is saved under the "continuing violation doctrine," which in some instances delays the accrual of an injury where an "earlier violation may be recognizable as actionable only in light of later events," or where the defendant's conduct is such that "each day or week brings a fresh wrong." *Pitts v. City of Kankakee*, 267 F.3d 592, 595 (7th Cir. 2001); *see also Heard v. Sheahan*, 253 F.3d 316, 319-20 (7th Cir. 2001) (statute of limitations on prisoner's

---

[3] Defendants have raised plausible arguments in support of dismissal. For instance, Plaintiff has alleged no facts that would appear to implicate her Sixth Amendment right to a speedy or public trial, to counsel, or to confront adverse witnesses. *See* U.S. Const. amend VI. Similarly, the Eighth Amendment's prohibition on cruel and unusual punishment has no applicability to actions taken during an arrest. *See Sides v. City of Champaign*, 496 F.3d 820, 828 (7th Cir. 2007). Given Plaintiff's abandonment of these claims, the Court declines to discuss their viability in any detail.

Eighth Amendment claim based on failure to provide medical care began to run on last day prison failed to treat his condition). The doctrine has no applicability here, however, because the Supreme Court has squarely rejected the notion that an arrest could set into motion events creating an ongoing violation that alters the date of accrual for a Fourth Amendment claim. *Wallace v. Kato*, 549 U.S. 384, 397 (2007). Because the plaintiff can plead all the elements of a false arrest claim on the day of the arrest, the claim accrues at that time. *Brooks*, 564 F.3d at 832. Plaintiff's claim premised on the Fourth Amendment is therefore untimely, and this aspect of Count I is dismissed with prejudice.

That leaves Plaintiff's claim that Defendants conspired to violate her Fourteenth Amendment rights. (*See* R. 36, Pl.'s Resp. at 10-11.) Defendants argue that this claim must be dismissed because Plaintiff has failed to allege a Fourteenth Amendment violation. (R. 23, Defs.' Mot. at 9; R. 37, Defs.' Reply at 10 n.3) For the reasons articulated in Section I above, this Court has determined that Plaintiff has a viable Fourteenth Amendment claim under *Brady*. Accordingly, this aspect of the motion is denied.

### III. Malicious Prosecution

In Count III, Plaintiff alleges a malicious prosecution claim against Officers Buckley and Elliott-Holmes, asserting that they initiated criminal charges against her without any legitimate basis for doing so. (R. 19, First Am. Compl. ¶¶ 38-46.) Defendants point out that Plaintiff labeled Count III as a "federal" malicious prosecution claim, and argue that this claim is not viable because Illinois provides a state law cause of action for malicious prosecution. *See McCann*, 337 F.3d at 786 (federal malicious prosecution claim not viable since Illinois provided tort claim for malicious prosecution); *Newsome v. McCabe*, 256 F.3d 747, 751 (7th Cir. 2001)

12

("[T]he existence of a tort claim under state law knocks out any constitutional theory of malicious prosecution."). In response to Defendants' motion, Plaintiff clarifies that she simply mistitled this claim and actually intended to raise a state law claim for malicious prosecution instead. (R. 36, Pl.'s Resp. at 3-4). The Court therefore proceeds to analyze this claim under state law.

In order to allege a claim for malicious prosecution under Illinois law, a plaintiff must plead the following five elements: (1) the commencement or continuance of a judicial proceeding by defendants; (2) the termination of the proceeding in favor of the plaintiff; (3) the absence of probable cause for such proceeding; (4) the presence of malice; and (5) damages. *Johnson v. Saville*, ---F.3d---, 2009 WL 2244184, at *3 (7th Cir. 2009); *Logan v. Caterpillar, Inc.*, 246 F.3d 912, 921-22 (7th Cir. 2001). Plaintiff has satisfied these elements. She alleges the following: Officers Buckley and Elliot-Holmes caused criminal charges to be filed against her; the charges were ultimately terminated in her favor; there was no basis in the law for the initiation of the proceedings; the charges were filed maliciously in an attempt to divert attention away from their own misconduct; and she incurred damages in the form of emotional injuries, lost wages, and legal fees as a result of their actions. (R. 19, Pl.'s First Am. Compl. ¶¶ 39-45.) Because Plaintiff properly alleges a state law malicious prosecution claim, the Court denies Defendants' motion to dismiss. For the sake of clarity, however, the Court strikes the language in the complaint stating that Count III is brought under 42 U.S.C. § 1983. (*See* R. 19, First Am. Compl. at 6.)

### IV. IIED and Indemnity

In her remaining claims, Plaintiff raises a state law claim for IIED against the Defendant Officers and a state law indemnity claim against the City of Chicago as the Defendant Officers'

13

employer. (R. 19, Pl.'s First Am. Compl. ¶¶ 32-37, 54-58). Defendants argue that the Court should decline to exercise supplemental jurisdiction over these claims because the complaint contains no viable federal claim. (R. 32, Defs.' Mot. at 14; R. 37, Defs.' Reply at 13.) Because this Court has determined that Plaintiff has viable claims under the Fourteenth Amendment, the Court will exercise supplemental jurisdiction over her related state law claims. Defendants similarly argue that the indemnity claim against the City of Chicago must be dismissed because Plaintiff has not stated any viable claim on which to establish liability of the Defendant Officers. (R. 32, Defs.' Mot. at 14.) This argument is also rejected since the Court is permitting claims against the Defendant Officers to proceed. Accordingly, this aspect of the motion is denied.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss (R. 32) is granted in part and denied in part. The motion to dismiss Count I is granted to the extent the claim is based on the First, Fourth, Fifth, Sixth, and Eighth Amendments, and denied with respect to the Fourteenth Amendment *Brady* claim. The motion to dismiss Count II is denied. The motion to dismiss Count III is denied as to the state malicious prosecution claim, but the language in the complaint indicating that Count III is brought under 42 U.S.C. § 1983 is stricken. The motion to dismiss Count IV is granted to the extent that the claim is based on writing false police reports, writing false complaints, providing false testimony, and causing retaliatory disciplinary action to be filed, but denied with respect to Plaintiff's *Brady* claim pertaining to the suppression of evidence at trial. The motion to dismiss Count V is denied.

The parties are directed to reevaluate their settlement positions in light of this opinion and exhaust all efforts to settle this case. A status hearing will be held on **August 27, 2009,** at **9:45 a.m.** to set a firm litigation schedule for this case, including a firm trial date.

ENTERED: _/s/ Ruben Castillo_
**Judge Ruben Castillo**
**United States District Court**

**Dated: August 13, 2009**